UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.

CASE NO. 8:24cr334-SDM-NHA

18 U.S.C. § 371
(Conspiracy)

PING LI,
   a/k/a "pingli10126@gmail.com,"
   a/k/a "forestland101@gmail.com,"
   a/k/a "Oaktree.green@yahoo.com,"
   a/k/a "maybalzhang@yahoo.com"

18 U.S.C. § 951
(Acting as an Agent of a
Foreign Government)

**INDICTMENT**

The Grand Jury charges:

**COUNT ONE**

**A.   Introduction**

At times material to this Indictment:

1.    The People's Republic of China (PRC) was a one-party state led by the Chinese Communist Party (CCP). The PRC Intelligence Services (PRCIS) encompassed both civilian and military components of PRC intelligence programs. Civilian intelligence collection was handled by the Ministry of State Security (MSS).

2.    PING LI was a United States citizen who immigrated to the United States from the PRC. LI resided in the Middle District of Florida. At various times, LI worked for a major U.S. telecommunications company and an international information technology company.

3. MSS OFFICER 1, whose identity is known to the Grand Jury, was an officer of the PRC government who was employed by the MSS's Hubei provincial office, located in Wuhan, China.

4. From at least as early as 2012, LI worked at the direction of officers of the MSS, including MSS OFFICER 1, to obtain information of interest to the PRC government, including information concerning Chinese dissidents and pro-democracy advocates, members of the Falun Gong religious movement, and U.S.-based non-governmental organizations, and to report that information to the MSS. LI also provided the MSS with information obtained from his employer.

5. At no time did LI provide notification to the United States Attorney General as required by law that he was, in fact, acting as an agent of a foreign government, specifically the PRC.

### B. Background on Chinese Intelligence Operations

6. Among other things, the PRCIS and its various components are focused on identifying and influencing the foreign policy of other countries, including the United States, and obtaining sensitive and confidential information from those countries. The PRCIS seeks to obtain information on foreign intelligence operations directed at the PRC, corporate and industrial information that could benefit the PRC, biographical profiles of foreign politicians and intelligence officers, and the political, economic, and security policies of other countries that might affect the PRC.

7. Additionally, the PRC government regards any political dissent as a threat to the PRC's one-party system of government itself. Thus, the PRC government's national security and law enforcement agencies regard political dissent as a national security threat. The PRC government routinely monitors and actively censors political speech inconsistent with CCP-approved political viewpoints, as well as speech that threatens to damage the reputation of the PRC government or the CCP.

8. In particular, the PRCIS seeks information on and monitors individuals associated with the CCP's list of "Five Poisons," which consists of: (1) Uighur supporters of an independent nation state in Xinjiang, (2) Tibetans seeking to reverse the PRC's 1950 annexation of Tibet, (3) adherents of Falun Gong spiritual practice, (4) pro-democracy dissidents, including individuals associated with the 1989 Tiananmen Square protests and massacre, and (5) advocates for the independence of Taiwan. Falun Gong, also known as Falun Dafa, is a religious movement that originated in the PRC in the 1990s. Falun Gong is not one of the five religions formally recognized by the PRC government, and it has been banned since 1999. Its adherents both in China and abroad are of particular interest to the PRCIS because of Falun Gong's advocacy of ideas deemed subversive to the CCP.

9. The PRC government's efforts to censor political dissent do not end at the PRC's national borders. The PRC government, and in particular the MSS and the Ministry of Public Security (MPS), routinely monitor, among others, Chinese political dissidents who live in the United States and other countries outside China.

The PRC government, the MSS, and the MPS regularly use cooperative contacts both inside the PRC and around the world in an effort to influence, threaten, and coerce political dissidents abroad.

10. The PRC places strict limitations on access to information over the Internet, which make it difficult even for PRCIS officers to access information concerning the United States and other countries. Accordingly, PRCIS officers frequently depend on cooperative contacts outside of the PRC to conduct research on topics of interest to the PRCIS, which is used to further the PRCIS's mission.

### C. The Conspiracy

11. Beginning on an unknown date, but at least as early as in or around January of 2012, and continuing until the date of this Indictment, in the Middle District of Florida, People's Republic of China, and elsewhere, the defendant,

PING LI,
a/k/a "pingli10126@gmail.com,"
a/k/a "forestland101@gmail.com,"
a/k/a "Oaktree.green@yahoo.com,"
a/k/a "maybalzhang@yahoo.com"

did knowingly and willfully combine, conspire, and agree with other persons, known and unknown to the Grand Jury, to commit an offense against the United States, that is, to act as an agent of a foreign government, to wit, the People's Republic of China, without prior notification to the Attorney General, as required by law, in violation of 18 U.S.C. § 951(a).

### D.     Manner and Means

12.    The manner and means by which the co-conspirators sought to accomplish the objects of the conspiracy included, among others:

a.     It was part of the conspiracy that, for the purpose of advancing the interests of the PRC, MSS OFFICER 1 would and did send electronic communications to LI requesting information on topics of interest to the PRC, including, among other topics, information about Chinese dissidents and pro-democracy advocates living in the United States, practitioners of Falun Gong, non-governmental organizations, United States politicians, and the internal operations of LI's employer;

b.     It was further part of the conspiracy that, for the purpose of advancing the interests of the PRC, LI would and did conduct research and obtain information requested by MSS OFFICER 1;

c.     It was further part of the conspiracy that, for the purpose of advancing the interests of the PRC, LI would and did send information that he gathered to MSS OFFICER 1;

d.     It was further part of the conspiracy that, for the purpose of advancing the interests of the PRC, LI would and did communicate with MSS OFFICER 1 using both United States- and PRC-based communications platforms, as well as messaging applications;

e.     It was further part of the conspiracy that, for the purpose of advancing the interests of the PRC, LI would and did create numerous email

accounts with false subscriber information for the purpose of communicating with MSS OFFICER 1;

   f. It was further part of the conspiracy that, for the purpose of advancing the interests of the PRC, LI would and did travel to the PRC to meet with MSS OFFICER 1;

   g. It was further part of the conspiracy that co-conspirators would and did employ various techniques to protect their anonymity and to thwart detection of their activities by government and law-enforcement agencies; and

   h. It was further part of the conspiracy that co-conspirators would and did perform acts and make statements to misrepresent, hide, and conceal, and cause to be misrepresented, hidden, and concealed, the purpose of the conspiracy and the acts committed in furtherance thereof.

### E. Overt Acts

13. In furtherance of the conspiracy, and to effect the objects thereof, at least one of the co-conspirators committed or caused to be committed the following overt acts, among others, in the Middle District of Florida and elsewhere:

   a. On or about July 1, 2012, defendant LI traveled from the Middle District of Florida to Chicago, Illinois, and then to the PRC and, during this trip, met with one or more PRCIS officers.

   b. On or about August 12, 2012, MSS OFFICER 1 sent an email to defendant LI requesting information on practitioners of Falun Gong and pro-democracy advocates in the United States.

c. On or about August 18, 2012, defendant LI sent an email to MSS OFFICER 1 containing the name and biographical information of an individual affiliated with Falun Gong residing in Saint Petersburg, Florida.

d. On or about December 30, 2012, MSS OFFICER 1 sent an email to defendant LI requesting information concerning the electronic surveillance capabilities of the United States Government.

e. On or about January 4, 2013, defendant LI sent an email to MSS OFFICER 1 containing an article concerning the electronic surveillance capabilities of the United States Government.

f. On or about April 8, 2013, defendant LI traveled from the Middle District of Florida to New York, New York, and then to the PRC and, while in China, met with MSS OFFICER 1.

g. On or about April 27, 2013, MSS OFFICER 1 sent an email to defendant LI requesting information about two Israeli authors who had written a book concerning Falun Gong.

h. On or about April 29, 2013, defendant LI sent an email to MSS OFFICER 1 containing information about the two Israeli authors.

i. On or about May 28, 2014, MSS OFFICER 1 sent an email to defendant LI requesting information about a U.S. company and its president.

j. On or about June 6, 2014, defendant LI sent four emails to MSS OFFICER 1 containing information concerning a U.S. company and its president.

7

  k. On or about December 5, 2014, defendant LI traveled from the Middle District of Florida to Dulles, Virginia, and then to the PRC and, while in the PRC, met with MSS OFFICER 1.

  l. On or about March 4, 2015, MSS OFFICER 1 sent an email to defendant LI requesting information about branch offices that LI's employer, a major U.S. telecommunications company, had opened in the PRC.

  m. On or about March 26, 2015, defendant LI sent an email to MSS OFFICER 1 containing information concerning his employer's branch offices in the PRC.

  n. On or about April 4, 2015, defendant LI created the email address oaktree.green@yahoo.com and sent MSS OFFICER 1 three emails containing information concerning the operation of non-governmental organizations in the United States.

  o. On or about August 24, 2015, MSS OFFICER 1 sent an email to defendant LI requesting information about a named non-governmental organization.

  p. On or about August 30, 2015, defendant LI created the email address maybalzhang@yahoo.com and used that email address to send MSS OFFICER 1 information about a named non-governmental organization.

  q. On or about September 24, 2015, MSS OFFICER 1 sent an email to defendant LI, stating that he would create an email account with a Chinese email provider, to which both MSS OFFICER 1 and LI would have access, so that they could more easily communicate and share files.

  r. On or about September 29, 2015, defendant LI sent an email to MSS OFFICER 1, stating that he had uploaded files to their shared Chinese email account, and asking MSS OFFICER 1 to delete the files after reviewing them.

  s. On or about February 5, 2016, defendant LI traveled from the Middle District of Florida to Detroit, Michigan, and then to the PRC and, while in the PRC, met with MSS OFFICER 1.

  t. On or about February 23, 2016, while in the PRC, defendant LI conducted a Chinese-language online search terms related to the Hubei State Security Department.

  u. On or about January 20, 2017, defendant LI traveled from the Middle District of Florida to Detroit, Michigan, and then to the PRC and, while in the PRC, met with MSS OFFICER 1.

  v. On or about March 31, 2017, MSS OFFICER 1 sent an email to defendant LI, stating that he was waiting for LI's training instruction plan.

  w. On or about April 10, 2017, defendant LI sent an email to MSS OFFICER 1 stating that he had placed something into a Chinese email account that LI and MSS OFFICER 1 shared, and asking MSS OFFICER 1 to delete the material after reading it.

  x. On or about May 6, 2021, MSS OFFICER 1 sent an email to defendant LI requesting information concerning hacking events targeting United States companies, including a widely publicized hacking of a major United States company by the Chinese government.

y. On or about May 10, 2021, defendant LI sent an email to MSS OFFICER 1 containing information concerning the United States government's response to the Chinese government's hacking of a major United States company.

z. On or about March 10, 2022, MSS OFFICER 1 sent an email to defendant LI requesting information concerning LI's new employer, an international information technology company, as well as materials relating to cybersecurity training.

aa. On or about March 11, 2022, defendant LI sent an email to MSS OFFICER 1 containing cybersecurity training materials and providing information about his new employer.

bb. On or about June 14, 2022, MSS OFFICER 1 sent an email to defendant LI requesting information concerning an individual who, according to MSS OFFICER 1, had resided in the PRC but fled to the United States, and providing the name and suspected residential address in the United States of that individual.

cc. On or about June 14, 2022, defendant LI sent an email to MSS OFFICER 1 containing information about the owners of the residential address that MSS OFFICER 1 had provided to LI.

All in violation of 18 U.S.C. § 371.

## COUNT TWO

1.  The allegations set forth in paragraphs 1 through 12 of this Indictment are realleged and incorporated by reference herein.

2.  Beginning on an unknown date, but at least as early as in or around January of 2012, and continuing until the date of this Indictment, in the Middle District of Florida, and elsewhere, the defendant,

PING LI,
a/k/a "pingli10126@gmail.com,"
a/k/a "forestland101@gmail.com,"
a/k/a "Oaktree.green@yahoo.com,"
a/k/a "maybalzhang@yahoo.com"

aided and abetted by other persons, known and unknown to the Grand Jury, did knowingly act within the United States as an agent of a foreign government, to wit,

the People's Republic of China, without prior notification to the Attorney General, as required by law, in violation of 18 U.S.C. §§ 951(a) and 2.

A TRUE BILL,

_____
Foreperson

ROGER B. HANDBERG
UNITED STATES ATTORNEY

MATTHEW G. OLSEN
ASSISTANT ATTORNEY GENERAL
NATIONAL SECURITY DIVISION
U.S. DEPARTMENT OF JUSTICE

_____
Daniel J. Marcet
Assistant United States Attorney
Chief, National Security Section

_____ for
Scott Claffee
Trial Attorney
Counterintelligence and Export Control Section

_____
Karyna Valdes
Assistant United States Attorney

FORM OBD-34
July 24

No. _____

# UNITED STATES DISTRICT COURT
## Middle District of Florida
## Tampa Division

## THE UNITED STATES OF AMERICA

vs.

### PING LI,
a/k/a "pingli10126@gmail.com," a/k/a "forestland101@gmail.com,"
a/k/a "Oaktree.green@yahoo.com," a/k/a "maybalzhang@yahoo.com"

## INDICTMENT
Violations: 18 U.S.C. § 371
18 U.S.C. § 951

A true bill,

_____
Foreperson

Filed in open court this 17th day

of July, 2024.

_____ — Karina Nieves
Clerk

Bail $_____

GPO 863 525