AF Approval *TLK for SCN*                                   Chief Approval *DQM*

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

UNITED STATES OF AMERICA

     v.                                   CASE NO. 8:24-cr-334-SDM-NHA

PING LI

### PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Roger B. Handberg, United States Attorney for the Middle District of Florida, and the defendant, Ping Li, and the attorney for the defendant, Daniel Fernandez, Esq., mutually agree as follows:

**A.**  **Particularized Terms**

    1.   Counts Pleading To

The defendant shall enter a plea of guilty to Count One of the Indictment.  Count One charges the defendant with Conspiracy to Act as an Agent of a Foreign Government without Prior Notification to the Attorney General.

    2.   Maximum Penalties

Count One carries a maximum sentence of 5 years' imprisonment, a fine not to exceed $250,000, a term of supervised release of not more than 3 years, and a special assessment of $100. With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offenses, and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offenses, or to the community, as set forth below.

3. <u>Elements of the Offenses</u>

The defendant acknowledges understanding the nature and elements of the offenses with which defendant has been charged and to which defendant is pleading guilty. The elements of Count One are:

<u>First</u>: Two or more people agreed to try to accomplish a common and unlawful plan to act as an agent of a foreign government without notification to the Attorney General;

<u>Second</u>: The defendant knew about the plan's unlawful purpose and willfully joined in it;

<u>Third</u>: During the conspiracy, one of the conspirators knowingly engaged in at least one overt act as described in the indictment; and

<u>Fourth</u>: The overt act was committed at or about the time alleged and with the purpose of carrying out or accomplishing some object of the conspiracy.

The elements of acting as an agent of a foreign government without notification to the Attorney General are:

<u>First</u>: The defendant acted as an agent of a foreign government or official;

<u>Second</u>: The defendant failed to notify the Attorney General that he would be acting as an agent of a foreign government or official prior to so acting;

<u>Third</u>: The defendant acted knowingly; and

<u>Fourth</u>: The defendant acted, at least in part, as an agent for a foreign government or official while in the United States.

An "agent of a foreign government" is an individual, other than a diplomatic or consular officer or attaché, who agrees to operate within the United States subject



Defendant's Initials

2

to the direction or control of a foreign government or official." 18 U.S.C. § 951(a),

(d). The relationship between the foreign government and its agent does not need to

mirror an employee's control over the activities of an employee; a lesser degree of

direction is sufficient. Indeed, an independent contractor also qualifies as an agent

under Section 951.

    4.    Counts Dismissed

        At the time of sentencing, Count Two will be dismissed pursuant to

Fed. R. Crim. P. 11(c)(1)(A).

    5.    No Further Charges

        If the Court accepts this plea agreement, the United States Attorney's

Office for the Middle District of Florida agrees not to charge defendant with

committing any other federal criminal offenses known to the United States

Attorney's Office at the time of the execution of this agreement, related to the

conduct giving rise to this plea agreement.

    6.    Acceptance of Responsibility - Three Levels

        At the time of sentencing, and in the event that no adverse information

is received suggesting such a recommendation to be unwarranted, the United States

will recommend to the Court that the defendant receive a two-level downward

adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a). The

defendant understands that this recommendation or request is not binding on the

Court, and if not accepted by the Court, the defendant will not be allowed to

withdraw from the plea.



Defendant's Initials

3

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG § 3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

**B.**   **Standard Terms and Conditions**

1.   Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offenses, pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from



Defendant's Initials

4

simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013.  The special assessment is due on the date of sentencing.

The defendant understands that this agreement imposes no limitation as to fine.

2.   <u>Supervised Release</u>

The defendant understands that the offenses to which the defendant is pleading provide for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.   <u>Immigration Consequences of Pleading Guilty</u>

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4.   <u>Sentencing Information</u>

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information,

_LP_____
Defendant's Initials

including the totality of the defendant's criminal activities, if any, not limited to the counts to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5.    <u>Financial Disclosures</u>

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the

_LP_____

Defendant's Initials

6

purpose of making any recommendations to the Court and for collecting any

assessments, fines, restitution, or forfeiture ordered by the Court. The defendant

expressly authorizes the United States Attorney's Office to obtain current credit

reports in order to evaluate the defendant's ability to satisfy any financial obligation

imposed by the Court.

      6.    Sentencing Recommendations

        It is understood by the parties that the Court is neither a party to nor

bound by this agreement. The Court may accept or reject the agreement or defer a

decision until it has had an opportunity to consider the presentence report prepared

by the United States Probation Office. The defendant understands and

acknowledges that, although the parties are permitted to make recommendations and

present arguments to the Court, the sentence will be determined solely by the Court,

with the assistance of the United States Probation Office. Defendant further

understands and acknowledges that any discussions between defendant or

defendant's attorney and the attorney or other agents for the government regarding

any recommendations by the government are not binding on the Court and that,

should any recommendations be rejected, defendant will not be permitted to

withdraw defendant's plea pursuant to this plea agreement. The government

expressly reserves the right to support and defend any decision that the Court may

make with regard to the defendant's sentence, whether or not such decision is

consistent with the government's recommendations contained herein.



Defendant's Initials

7

7.   <u>Defendant's Waiver of Right to Appeal the Sentence</u>

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8.   <u>Middle District of Florida Agreement</u>

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

*LP*
_____
Defendant's Initials

8

9.   Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.   Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant

_LP_

Defendant's Initials

9

questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement.  The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.   Factual Basis

Defendant is pleading guilty because defendant is in fact guilty.  The defendant certifies that defendant does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

## FACTS

The People's Republic of China (PRC) is a one-party state led by the Chinese Communist Party (CCP). The PRC Intelligence Services (PRCIS) encompasses both civilian and military components of PRC intelligence programs. Civilian intelligence collection is handled by the Ministry of State Security (MSS).

PING LI is a United States citizen who immigrated to the United States from the PRC. LI resides in the Middle District of Florida. At various times during his relationship with the MSS, LI worked for a major U.S. telecommunications company and an international information technology company.

_LP_
Defendant's Initials

10

MSS OFFICER 1 was an officer of the PRC government who was employed by the MSS's Hubei provincial office, located in Wuhan, China.

From at least as early as 2012, LI worked at the direction of officers of the MSS, including MSS OFFICER 1, to obtain information of interest to the PRC government, including information concerning Chinese dissidents and pro-democracy advocates, members of the Falun Gong religious movement, and U.S.-based non-governmental organizations, and to report that information to the MSS. LI also provided the MSS with information obtained from his employer. LI created online accounts using false subscriber information, which he used to provide information to MSS OFFICER 1. LI also routinely deleted emails with MSS OFFICER 1 and instructed MSS OFFICER 1 to delete materials he had sent in order to evade detection by law enforcement.

The below summary provides an example of some of MSS OFFICER 1's taskings to LI, but does not contain every act that LI conducted on behalf of the MSS.

Initial Taskings in 2012

In July of 2012, LI traveled to the PRC and met with MSS OFFICER 1 and other MSS Officers. LI then returned to the United States and created a new email address containing false subscriber information.

On August 12, 2012, MSS OFFICER 1 sent an email to LI. He wrote the following, which has been translated from Chinese to English:


Defendant's Initials

11

> I've received the information. Could you help me check for the latest information regarding the law suits that Falun Gong practitioners plan to bring against state government officials? Also about those pro-democracy activists, what movements have they had. The person you know, what are his/her name and background, and such? Thanks!

On August 18, LI replied to MSS OFFICER 1 and thanked him for the help that he had provided when LI was in China. LI then told MSS OFFICER 1 the name of an attorney in St. Petersburg, Florida, to whom he had spoken. LI provided biographical information about the attorney and information about a blog that the attorney had written for a publication associated with Falun Gong. LI further stated that the attorney had loaned his wife Falun Gong books. Falun Gong, also known as Falun Dafa, is a religious movement that originated in the PRC in the 1990s. Falun Gong is not one of the five religions formally recognized by the PRC government, and it has been banned since 1999. Its adherents both in China and abroad are of particular interest to the PRCIS because of Falun Gong's advocacy of ideas deemed subversive to the CCP.

On August 23, 2012, MSS OFFICER 1 sent emails thanking LI for the information he provided, and asking:

> Bro, if it is convenient to get in touch with the local Chinese community, look out for movement of the pro-democracy activists before the 18th National Congress. Also, pay attention to whether anyone you know works at the CIA or FBI. I will tell you directly if I need anything. Not going to hide anything from you.

LI responded, agreeing to "keep an eye out for [MSS OFFICER 1]."

_____
Defendant's Initials

On December 30, 2012, MSS OFFICER 1 sent the following email to LI:

> I recently watched a classic Hong Kong movie called
> "Overheard" starring Lau Ching-wan. In the movie, the team's
> technical security and prevention work in protecting state heads
> or important overseas establishments is very meticulous and
> professional. This in China is still at the starting point. Internet
> censorship is pretty bad here in China. I have recently wanted to
> know more about this. You are an expert in this area. How is this
> done in the great country of United States? Is it as exciting inside
> the US Embassies as how it is in scenes of "Overheard"
> especially when state officials and important multinational
> companies conduct foreign visits?

LI responded, promising to "look for this kind of information" and "send it to you when I find it." On January 4, 2013, LI sent a 4-page article to MSS OFFICER 1 entitled "Talking about Phone Monitoring in the United States." LI then sent another email containing his own opinion on the article, advising MSS OFFICER 1 as to which types of communications the U.S. government can monitor and which types it cannot.

2013 to 2014

On April 27, 2013, MSS OFFICER 1 requested that LI provide information concerning two Israeli authors who had written a book concerning Falun Gong. On April 29, LI responded with publicly accessible information about the Israeli authors and their social media.

On May 28, 2014, MSS OFFICER 1 requested from LI information about a U.S. company, its president, and its president's wife. LI responded that day with the requested information. The following day, MSS OFFICER 1 followed up with

_LP_
Defendant's Initials

13

additional questions about the company, specifically whether the company had U.S. government support. LI responded with four additional emails containing detailed information about the company.

On September 15, 2014, MSS OFFICER 1 asked LI for information about a named individual from Hubei, China. MSS OFFICER 1 provided biographical information for the individual, including his home address in California, his phone number, and the make and model of his car. MSS OFFICER 1 stated that the individual was involved in Falun Gong and had protested in front of a Chinese consulate in California.

That same day, LI responded with information about an individual who he believed to be the person who MSS OFFICER 1 had identified. On September 17, LI requested additional internet searches for the named individual, and sent the resulting information to MSS OFFICER 1.

2015

On December 5, 2014, LI traveled to Beijing, returning on December 28. On February 18, 2015, LI sent an email to MSS OFFICER 1, thanking MSS OFFICER 1 and his colleague for taking him to a hot spring.

On March 4, 2015, MSS OFFICER 1 sent an email to LI requesting information about branch offices that LI's employer, a major U.S. telecommunications company, had opened in China. MSS OFFICER 1 specifically wanted to know about whether the company was engaging in any data collection in China.

14


Defendant's Initials

On March 26, 2015, LI sent an email to MSS OFFICER 1 concerning his

employer's activities in China. LI wrote:

> I have asked around. [Company] indeed opened branches in
> Beijing, Guangzhou and Shanghai. Since the telecommunication
> market is not opened to foreign companies, these branches
> currently only offer services like providing business plans, data
> analyses, hardware sales, and other services to their foreign
> companies. Its clientele generally consists of Chinese
> telecommunication enterprises (technical support service) and
> foreign enterprises (communication services).

On April 1, 2015, MSS OFFICER 1 responded, thanking LI for the

information and requesting information about how the United States

government administers Nongovernmental Organizations (NGOs). On April

4, 2015, LI created a new email address with false subscriber information.

That same day, LI used the new account to send MSS OFFICER 1 three

emails containing articles. The first email contained a four-page attachment

entitled: "Source: Operations and Management of NGOs in the United

States." The second email contained a three-page attachment entitled

"Management of NGOs in the United States." The third email contained a

five-page attachment discussing the history, background, taxation, and tax-

exempt treatment of NGOs in the United States. One of the emails also

contained a detailed discussion of the Foreign Agent Registration Act and its

application to NGOs.

On August 24, 2015, MSS OFFICER 1 sent an email to LI requesting

information on a specific U.S. NGO that was engaging in environmental activism in



Defendant's Initials

15

Southeast Asia:

> I have to trouble you to do some searches for me. There is a
> NGO called [Redacted]. It is active mainly in Southeast Asia,
> and headquartered in the United States. Please do some research
> on this organization's U.S. information, such as its structure
> including its personnel and their responsibilities, economic data,
> and matters associated with China. Thanks!!!

On August 29, 2015, LI created another new email account with false

subscriber information. That same day, LI used the new account to send an email to

MSS OFFICER 1 containing information about the named NGO. The information

included information from the NGO's website, as well as a full list of its board

members, leadership council, directors, and employees, as well as photographs of

personnel in Asia and elsewhere, and one of its tax returns.

On August 30, MSS OFFICER 1 replied, stating that he was excited to see

LI's response email. MSS OFFICER 1 suggested, "let's find a communication

platform that is easier for us to get hold of each other."

LI responded that same day, asking for MSS OFFICER 1 help in registering

an account on "Sina." Sina is a Chinese email provider. LI wrote:

> I am thinking about registering an account on Sina, so that we
> can communicate more easily in the future. The Chinese web site
> requires a cell phone number for verification; therefore, I could
> not register one. See if you can get one for me.

On September 24, MSS OFFICER 1 emailed LI. MSS OFFICER 1 said, "I

will send the email address to you once I finish registering it. We will use that email

to stay in touch in the future." On September 25, MSS OFFICER 1 provided the

username and password for a shared Chinese email account.

16


Defendant's Initials

On September 29, LI wrote:

> I have put two documents in the cloud drive linked to the Sina mailbox. Try and see if you can see them. If you can, we can use this method to transmit documents from now on. You can delete the original once you have downloaded them.

On October 18, MSS OFFICER 1 responded:

> Brother LI, I logged on today and saw the email you sent. Have received the two documents in the cloud drive of the Sina mailbox! Deleted the relevant documents.

## 2017

LI traveled to China on January 20, 2017 and returned on February 5, 2017. After LI returned, he and MSS OFFICER 1 exchanged numerous emails, some of which appeared to relate to requests for information MSS OFFICER 1 had made in person in China.

On March 31, 2017, MSS OFFICER 1 emailed LI, stating:

> Brother LI, how has work been, still very busy? Brother I am waiting to see your training instruction plan. Let me also study it, so we both can improve.

On April 7, LI responded that MSS OFFICER 1 would have to "wait awhile for the training instruction plan." On April 10, LI wrote to MSS OFFICER 1: "Brother [Redacted], I put something in the Sina mailbox. Delete after reading."

## 2021

On May 6, 2021, MSS OFFICER 1 sent LI an email asking for information on the Russian "Solar Wind" hack on U.S. companies, as well as public reports about Chinese hackers attacking a U.S. company.

On May 10, LI responded with information concerning the Solar Wind hack



Defendant's Initials

and the U.S. government's response to Chinese hacking of a U.S. company. That same day, MSS OFFICER 1 responded and asked for another copy of the training materials that LI had previously sent.

On May 14, LI sent an email to MSS OFFICER 1 discussing the training documents. LI stated that he no longer could access the training documents.

2022

On March 10, 2022, MSS OFFICER 1 emailed LI to ask about LI's new employer, an international information technology company, as well as cybersecurity training materials:

> Brother Li,
>
> [Redacted] is the U.S. company that you are at, what companies are the customers, the roster.
>
> Also, teaching materials from previous cybersecurity training (if any, please support and look for it). The global strategic pattern has changed, it will not be the same as before, using a backdoor. Don't do these things any more.

In this email, MSS OFFICER 1 was requesting information from LI's employer's cybersecurity trainings, and discussing hacking tactics that could be employed.

On March 11, LI responded that he no longer had access to his old training material. LI stated that he had found similar material and attached a cybersecurity manual, and was hopeful that would be helpful. LI also provided a description of his employer and its customers, stating it is the second largest IT company in India and has 250,000 employes.

On June 14, 2022, MSS OFFICER 1 emailed LI to request help with finding



18

Defendant's Initials

information on someone he claimed had committed some wrongdoing and fled from

China:

> There is one thing with which I hope you my big brother can
> help me. [Redacted] (can search on Baidu) from Ezhou Hubei
> committed some offense and fled to the United States. The
> specific address is [Redacted], CA, United States. Could you help
> me and find out what he has been doing recently? The whole
> family is in the United States.

Open-source information further shows that the Hubei Provincial Security

Department issued a public "wanted" notice for the named individual in

approximately September 2019.

LI responded with detailed information about the owners of the property

address provided by MSS OFFICER 1, as well as a link to the county tax collector

website for the address, a link to a real estate company website with photographs and

other information about the home, and a screenshot of the tax information for the

property, which identified the owners.

<u>Arrest and Confession</u>

On July 20, 2024, LI was arrested for the above crimes. LI agreed to waive his

*Miranda* rights and speak to law enforcement. LI admitted that he knew that MSS

OFFICER 1 and others for whom he gathered information worked for the MSS.

Initially, LI made several false statements. He stated that MSS OFFICER 1

only requested information about investing in the stock market from him. LI also

denied using any fake email addresses. LI further claimed that the MSS would

provide him with names of individuals—political dissidents and Falun Gong



Defendant's Initials

19

practitioners in the United States—but that he did not provide information about those individuals.

LI was confronted with copies of the emails that he exchanged with MSS OFFICER 1. LI admitted to conducting research for the MSS and providing information at their request. He further admitted that he had shared cybersecurity materials internal to his employer, which he knew he was not permitted to share.

At no time was Li a diplomatic or consular officer or attaché of the PRC. Further, at no time did LI provide notification to the United States Attorney General as required by law that he was, in fact, acting as an agent of a foreign government, specifically the PRC.

The above is merely a summary of some of the events, some of the persons involved, and other information relating to this case. It does not include, nor is it intended to include, all the events, persons involved, or other information relating to this case.

12.    Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.



_____
Defendant's Initials

20

13.   <u>Certification</u>

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this _____ day of _____ 2024.

ROGER B. HANDBERG
United States Attorney

_____
Ping Li
Defendant

_____
Daniel J. Marcet
Assistant United States Attorney
Chief, National Security Section

_____
Daniel Fernandez, Esq.
Attorney for Defendant

_____
Scott Claffee
Trial Attorney
Counterintelligence and Export
Control Section

_____
Karyna Valdes
Assistant United States Attorney

21